IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

BRIAN MANOOKIAN, MANOOKIAN PLLC,  )
AFSOON HAGH, and HAGH LAW PLLC,  )
         )
   Appellants     )
         )
v.         )   Case No: 3:23-cv-00392
         )   Judge Aleta A. Trauger
JEANNE ANN BURTON, TRUSTEE,  )
         )
   Appellee.     )

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Case No. 3:20-ap-90002

_____

BRIEF OF THE APPELLEE, JEANNE ANN BURTON, TRUSTEE

_____


Phillip G. Young, Jr.
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel:  615-465-6000
phillip@thompsonburton.com

*Special Counsel for Appellee,*
*Jeanne Ann Burton, Trustee*

# I. TABLE OF CONTENTS

Page

I.    Table of Contents……………………………………………………………..1

II.   Table of Authorities…………………………………………………….…......2

III.  Standard of Review……………………………………………………...…..5

IV.   Statement of the Case………………………………………………..……6

V.    Summary of Argument…………………………………….…………..8

VI.   Argument……………………………………………………...……10

        A.    THE APPELLANTS FAILED TO ESTABLISH ANY BASIS FOR
              RECUSAL…………………………………………………..…......10

                a.   THE APPELLANTS OFFERED NO EVIDENCE TO SUPPORT THE
                     RECUSAL MOTION…………………………….…………..…...12

                b.   THERE ARE NO INDICIA OF BIAS……………….………......13

        B.    THERE    WERE    NO    IMPERMISSIBLE    EX    PARTE
              COMMUNICATIONS WITH THE BANKRUPTCY COURT………...17

        C.    THE BANKRUPTCY COURT EXPLAINED THAT IT CONDUCTED
              NO EXTRAJUDICIAL RESEARCH…………..…………………..…20

        D.    ONE OF THE APPELLANTS, BRIAN MANOOKIAN, LACKS
              STANDING………………………………………………………..…22

VII.  Conclusion……………………………………………………….......23

VIII. Certificate of Compliance with Fed. R. App. P. 32(a)(7)……………...……..24

IX.   Certificate of Service……………………………………………………25

## II.    TABLE OF AUTHORITIES

### Federal Cases

PAGE

*Blixseth v. Yellowstone Mt. Club, LLC*
    742 F.3d 1215 (9th Cir. 2013)……. …………………………………..….…..17,19

*David v. City & Cnty. Of Denver*
    101 F.3d 1344 (10th Cir. 1996)………………………………...…………...….…5

*Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*
    77 F.3d 880 (6th Cir. 1996)……. …………………………………..……………..22

*Hinman v. Rogers*
    831 F.2d 937 (10th Cir. 1987)………………………………………………….…...5

*Hook v. McDade*
    89 F.3d 350 (7th Cir. 1996)………………………………………..……...……..11

*In re Allen*
    2009 LEXIS 4431 (Bankr. Idaho 2009)……. …………………..……..….……17,19

*In re Beard*
    811 F.2d 818 (4th Cir. 1987)……. …………………………..…….……..19

*In re Casco Bay Lines, Inc.*
    17 B.R. 946 (1st Cir. BAP 1982)……. …………………………..…….……..19

*In re City of Detroit*
    828 F.2d 1160 (6th Cir. 1987)………………………………………….……..5

*In re Gibson*
    2010 WL 744572 (Bankr. C.D. Ill. 2010)…………………………..……….....10

*In re Nat'l Union Fire Ins. Co.*
    839 F.2d 1226 (7th Cir. 1988)……………………………….……….…….10

*In re Pansier*
    2019 Bankr. LEXIS 2431 (Bankr. E.D. Wisc. 2019)……………………………11

*In re Parson*
    2018 Bankr. LEXIS 830 (Bankr. N.D. Tex. 2018)……. …………..……….....…19

*In re Sherwin-Williams Co.*
   607 F.3d 474 (7th Cir. 2010)………..…………………………....……….……11

*In re Stroller*
   374 B.R. 618 (Bankr. N.D. Ill. 2007)………………………………….…...…10,11

*James v. Cuyahoga Cnty..*
   2023 U.S. Dist. LEXIS 41191 (N.D. Ohio 2023)…………………………...….….5

*Laird v. Tatum*
   409 U.S. 824 (1972)……………………………..……………………….……5,10

*Leaf v. Nike, Inc.*
   2021 U.S. App. LEXIS 32180 (6th Cir. 2021)……. ……………..……….……..16

*Liteky v. United States*
   510 U.S. 540 (1994)……. ………………………………………..…………..…16

*Metcalf v. Golden (In re Adbox, Inc.)*
   234 Fed. Appx. 420 (9th Cir. 2007)……. …………………………………….…18

*Reed v. Rhodes*
   179 F.3d 453 (6th Cir. 1999)……. ………………………………..……………..17

*Seidel v. Durkin (In re Goodwin)*
   194 B.R. 214 (9th Cir. BAP 1996)…………………………….…...…...10,19,20

*Simon v. Amir (In re Amir)*
   436 B.R. 1 (6th Cir. B.A.P. 2010)………………………………………..…22

*Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.)*
   286 B.R. 49 (6th Cir. B.A.P. 2002)………………………………………………..22

*United States v. Angelus*
   258 F. Appx. 840 (6th Cir. 2007)…………………..………………………...…5

*United States v. Hartsel*
   199 F.3d 812 (6th Cir. 1999)………………………………………………….……5

*United States v. Holland*
   519 F.3d 909 (9th Cir. 2008)……. ……………………………..………....……..11

*United States v. Parker*
   837 F. Appx. 341 (6th Cir. 2020)…………………………………...……..…5,16

3

*United States v. Van Griffin*
    874 F.2d 634 (9th Cir. 1989)……. ……………………………………..………..……..17

*United States v. Wecht*
    484 F.3d 194 (3d. Cir. 2007)……. ……………………………………..………..……..17

*Wheeler v. Southland Corp.*
    875 F.2d 1246 (6th Cir. 1989)…………...…………………………………..……...5

*Willenbring v. United States*
    306 F.2d 944 (9th Cir. 1962)……. ……………………………………..………..……..17

**Federal Statutes**

                                                      PAGE

28 U.S.C. §455……………………………………..……………………………….........10

28 U.S.C. §453……………………………………..……………………………….........11

**Local Rules of Court**

                                                      PAGE

United States Bankruptcy Court for the M.D. of Tenn. Local Rule 9014-1………………12

### III.    STANDARD OF REVIEW

Federal appellate courts are very deferential to trial courts when reviewing a motion for recusal. Courts review a motion to recuse for an abuse of discretion. *See United States v. Hartsel*, 199 F.3d 812, 815 (6th Cir. 1999); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989); *In re City of Detroit*, 828 F.2d 1160, 1166 (6th Cir. 1987); *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1351 (10th Cir. 1996). Not only is the denial of a motion to dismiss reviewed for abuse of discretion, but the Sixth Circuit also takes the position that "to preserve judicial resources, 'a judge has a duty not to recuse when there is not a reason for it.'" *United States v. Parker*, 837 F. Appx. 341, 345 (6th Cir. 2020). The duty for a judge not to recuse and remain sitting is "equally as strong as the duty to not sit where disqualified", *Laird v. Tatum*, 409 U.S. 824, 837 (1972), and "unless a provision of federal law requires disqualification, the [judge] has a duty to preside even if doing so might be inconvenient." *James v. Cuyahoga Cnty*. 2023 U.S. Dist. LEXIS 41191, *32 (N.D. Ohio 2023); *see also, United States v. Angelus*, 258 F. Appx. 840, 842 (6th Cir. 2007); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

# IV.    STATEMENT OF THE CASE

This case is about whether a federal bankruptcy judge must recuse himself simply because he has made adverse procedural rulings against a party.  While the Appellants (one of whom has no standing to pursue this appeal) couch this as a case about *ex parte* communications and extrajudicial research, it is really about creating further judicial delay by attempting to remove a judge who does not bend to the whim of the Appellants.

The event that allegedly precipitated the filing of Brian Manookian and Manookian PLLC's Motion to Disqualify Judge Charles Walker (Bankr. Doc. 161) (the "Recusal Motion") was a hearing in which the Bankruptcy Court ordered that all depositions (including those of the Appellee and her special counsel) occur at the United States Bankruptcy Court for the Middle District of Tennessee.  This ruling regarding an administrative function angered the Appellants and, they allege, is evidence of Judge Charles Walker's bias against them.  The Appellants proceeded to file the Recusal Motion and attempted to depose the sitting bankruptcy judge by subpoena (which was quashed by the Bankruptcy Court and affirmed by this Court). In their Recusal Motion, the Appellants allege that there were two sources of Judge Walker's alleged bias:  a communication between Appellee's special counsel and the courtroom deputy, and the Bankruptcy Court's alleged "extrajudicial research".

Despite these serious and defamatory allegations, the Appellants have offered no evidence (1) that Judge Charles Walker has shown any bias (objectively or subjectively); (2) that alleged *ex parte* communications were impermissible; or (3) that the Bankruptcy Court has conducted any extrajudicial research.  By contrast, in his Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), the Bankruptcy Court

explained in great detail the rationale behind his discovery order, why any communications with the courtroom deputy were not impermissible, and the source (from the record of the bankruptcy case) of the alleged "extrajudicial" information.

This appeal appears to be nothing more than the latest in a long string of delay tactics by the Appellants; as such, it should be denied and the Bankruptcy Court's order regarding recusal should be affirmed.

## V.    SUMMARY OF ARGUMENT

This appeal lacks any basis in fact or in law. First, despite an opportunity to present evidence at an evidentiary hearing, the Appellants were unable to present any evidence of Judge Charles Walker's alleged bias.  In support of their disqualification motion, the Appellants relied exclusively upon the Court's statements at various hearings (which, on their face, demonstrate the judge's lack of bias) and upon a deposition of Appellee's special counsel (who described an allegedly *ex parte* communication as a brief telephone call with the courtroom deputy regarding an administrative matter).  These are the undisputed facts of this case and they belie the allegations of the Appellants.

The alleged "*ex parte* communications" were in fact entirely permissible.  The one telephone call that was identified by Appellants was between Appellee's special counsel and a courtroom deputy, who is not a member of Judge Walker's chamber staff.  Moreover, the telephone call concerned an administrative issue or, at most, a security issue.  Case law is clear that communications between counsel and courthouse staff, especially those concerning administrative matters or security concerns, are not impermissible and would form no basis for recusal.

Nor did Judge Walker engage in any extrajudicial research.  He explained, in some detail, that the source of his statements regarding Brian Manookian's behavior before other tribunals was exclusively from the record of this case.  A judge's thorough review of a case's record should be a mark of excellence, not a basis for recusal.

Finally, the Appellee must once again point out to this Court that Brian Manookian has no standing for an appeal.  He is simply not a party to the adversary proceeding from

which this appeal emanates. The Court should find that he lacks standing in this appeal

from an order in the adversary proceeding in order to streamline future matters.

# VI.   ARGUMENT

## A.  THE APPELLANTS FAILED TO ESTABLISH ANY BASIS FOR RECUSAL

Judge Walker properly denied the Appellants' Recusal Motion because they failed to establish any basis for such recusal.  The statutory basis of the Recusal Motion is 28 U.S.C. § 455.  That section states in relevant part:

> (a)   Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b)  He shall also disqualify himself in the following circumstances:
> (1)   Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

In evaluating a motion brought under § 455, a judge is not required "to accept all allegations by the moving party as true" because "[i]f a party could force recusal of a judge by factual allegations, the result would be virtual open season for recusal."  *In re Gibson*, 2010 WL 744572, at *2 (Bankr. C.D. Ill. 2010); *see also Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222-23 (9th Cir. BAP 1996) (finding that the court is not required to take all factual allegations as true in a recusal motion).  Rather, disqualification "should be viewed as an extraordinary occurrence," and "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified."  *In re Stroller,* 374 B.R. 618, 621 (Bankr. N.D. Ill. 2007) (quoting *Laird v. Tatum*, 209 U.S. 824, 837 (1972)).  "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping."  *In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir. 1988) (citations omitted).

The party moving for recusal has a burden of proving doubts about the judge's impartiality. *In re* Pansier, 2019 Bankr. LEXIS 2431, at *2-3 (Bankr. E.D. Wisc. 2019); *Stroller*, 374 B.R. at 622. The Appellants have failed to meet that burden. A judge is required to recuse himself only where (a) a *reasonable* person might question his impartiality, or (b) where the judge is subjectively biased toward a party.[1] The first is an objective test that asks the court to consider how things might appear from a reasonable and rational party's perspective, not a "hypersensitive, unduly suspicious person." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). "That an unreasonable person focusing on only one aspect of the story might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). The second test is a subjective test; "[t]his test is highly personal in nature and requires each judge in such situation to set aside emotion and thoughtfully examine his ability to impartially 'administer justice without respect to persons.'" *United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008) (quoting 28 U.S.C. § 453).

The ultimate question presented by the Recusal Motion was whether an objective, reasonable person might question the impartiality of the Judge Charles Walker. The Bankruptcy Court properly found no basis for recusal because (a) the Appellants presented no evidence whatsoever to support recusal and (b) because the record is devoid of any bias, objectively or subjectively, by the Bankruptcy Court.

---

[1] Only the Bankruptcy Court can answer whether it is subjectively biased toward a party. Judge Charles Walker answered that question in the negative in the Bankruptcy Court's Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229).

a.  THE APPELLANTS OFFERED NO EVIDENCE TO SUPPORT THE RECUSAL MOTION

The Appellants did not support the allegations against Judge Charles Walker contained in their Recusal Motion because they offered <u>no evidence</u> at the evidentiary hearing conducted by the Bankruptcy Court on April 4, 2023.  As the Bankruptcy Court noted in its Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), the Appellants failed to comply with Local Rule 9014-1, which governs disclosure and presentation of evidence in an evidentiary proceeding.  Enforcing Local Rule 9014-1, the Bankruptcy Court ruled that the Appellants could not present any evidence at the hearing on the Recusal Motion because they had failed to timely file a witness and exhibit list (despite having extra time to do so due to a continuance of the hearing).  The Appellants did not include any issues concerning the Bankruptcy Court's enforcement of Local Rule 9014-1 in their statement of issues on appeal; therefore, the Bankruptcy Court's enforcement of the local rule is not a question for this Court.

Having failed to comply with Local Rule 9014-1, and the Bankruptcy Court having found that the Appellants could present no evidence due to their failures in that regard, the Appellants were unable to support their allegations against Judge Walker with any evidence.  They offered no admissible witnesses or exhibits.  The Appellants having failed to present any evidence to support their allegations, the Bankruptcy Court properly denied their Recusal Motion.  Likewise, this Court must find that there is no evidentiary basis to

overturn the Bankruptcy Court's findings.[2]

### b. THERE ARE NO INDICIA OF BIAS

Even if the Appellants had offered some evidence at the hearing on the Recusal Motion, there is no indication (in the record or otherwise) that Judge Charles Walker is objectively or subjectively biased against any of the Appellants. The Appellants' argument for recusal seems to rest upon the Bankruptcy Court's ruling, on a rather routine discovery dispute, that all depositions in the case must be conducted at the courthouse. This is not an indication of bias for a number of reasons. First, the discovery decision was not material or substantive in any regard and did not alter the Appellants' rights. The Bankruptcy Court summarized the immateriality of this discovery decision in its order:

> Moreover, despite alleging a "corrosive effect on the Court," movants point to no other prejudice to Mr. Manookian than the location of the depositions. There was no accusation linked to any ruling on a material issue, no objection overruled that hindered or impaired the movant's rights in this matter, and in fact, no instance of prejudice against the movants was articulated at all. The prejudice alleged from these three occurrences was that the depositions in this case were conducted in the courthouse. The location of depositions is an administrative issue, not a material issue. It does not impact the issues before the Court. Although Movants insist that requiring the depositions to be held in the courthouse reflects the presence of the Court's prejudice against Mr. Manookian, what it more reasonably reflects is the judge's familiarity with the case. The hearing on March 17, 2022 involved cross-motions to compel and reflected the biggest issue so far in this adversary: discovery. In fact, the case is comprised mostly of three years of discovery disputes, with rulings reflecting the Court's stamina for fairness and justiciable administration of the case. Moreover, none of these issues are material to the case.

---

[2] In their Opening Appeal Brief, the Appellants argue that they have been prevented from gathering evidence because Judge Walker quashed their attempt to subpoena him for testimony. This is a red herring for two reasons. First, this Court affirmed the Bankruptcy Court's order quashing that subpoena, on both procedural and substantive grounds. *See* Case No. 22-cv-00474, Doc. 8. Second, the Appellants failed to present what evidence was in their possession (which was obviously sufficient for them to sign and file the Recusal Motion) due to their non-compliance with local rules.

Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), at p. 15. An immaterial, procedural decision in not evidence of judicial bias.

Second, Judge Walker's order that all depositions occur at the courthouse affected the Appellee and her counsel at least as much as it affected the Appellants. Three depositions were ultimately conducted at the courthouse, those of Brian Manookian, Jeanne Ann Burton, and Phillip Young. The deposition of Afsoon Hagh was ultimately conducted by Zoom video conference. It is not as if the Appellee's witnesses were deposed in her counsel's office, while the Appellants' witnesses were deposed at the courthouse; rather, all witnesses (except Ms. Hagh) were deposed at the courthouse. The order affected all parties equally.

Third, as evidenced by statements of the Bankruptcy Court in its order, the decision to hold depositions at the courthouse was influenced by a number of factors beyond security. As special counsel for the Trustee explained at the hearing, the Trustee preferred to take all in-person depositions at the courthouse not just because of security but also because conducting depositions at the courthouse is not outside the normal course for a trustee, the courthouse provided a centralized location, and conducting the depositions at the courthouse provided the litigants easy access to the Court in case of discovery disputes. *See* Hearing Transcript (Attached on as Exhibit 1 to the Recusal Motion, Bankr. Doc. 161), pp. 82-83. In fact, the Trustee's primary reason for seeking to conduct depositions at the courthouse was the availability of the Bankruptcy Court to rule on discovery disputes, since there had already been multiple cross motions to compel discovery. Discovery was (and is) a significant, ongoing problem in this adversary proceeding; in fact, the hearing

conducted in this matter that is the source of the Recusal Motion was to resolve outstanding discovery disputes.

Finally, the Bankruptcy Court's own comments undermine the Appellants' claim that Judge Charles Walker is biased against them. Judge Walker's statements from the bench demonstrate that he was not prejudging any litigant or their character in any way:

> To be candid, Mr. Spragens, I mean, your client's past behavior before the tribunals, and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and <u>makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties. And to eliminate any of those perceptions,</u> and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior.

Hearing Transcript (Attached as <u>Exhibit 1</u> to the Recusal Motion, Bankr. Doc. 161), pp. 84-85 (emphasis added). Far from pre-judging Brian Manookian or his motives, the Bankruptcy Court specifically stated it was drawing no conclusions about Mr. Manookian and ordered that depositions be conducted at the courthouse to avoid any allegations of bad behavior, whether real or perceived. The Bankruptcy Court reiterated this viewpoint in its Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker:

> In fact.*[sic]* Judge Walker expressed his objective approach to the situation by pointing out that it would protect all parties from any uncomfortable situation or any accusation, as well as aid in the expeditious and efficient administration of discovery: "And to eliminate any of those perceptions, and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior." Transcript at p. 85

Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), at p. 14 (quoting Hearing Transcript (Attached as <u>Exhibit 1</u> to the Recusal Motion, Bankr. Doc. 161)).

Simply put, an adverse ruling is not enough to form a claim of bias. Even if a judge calls out a litigant and "looks unfavorably on a party's litigation tactics does not make the court improperly biased against that party." *Leaf v. Nike, Inc.*, 2021 U.S. App. LEXIS 32180, *19-20 (6th Cir. 2021) (citing *Liteky v. United States*, 510 U.S. 540, 550-51 (1994); *United States v. Parker*, 837 F. Appx. 341, 346 (6th Cir. 2020)). "For this type of criticism to reveal improper bias, the criticism must stem from something that can be described as wrongful (for example, a court's use of some outside-the-lawsuit source that it should not have considered)." *Leaf*, 2021 U.S. App. LEXIS 32180 at *20 (citing *Parker*, 837 F. Appx. at 346). Furthermore, "there must be a wrongfulness in that the view is either 'undeserved' or 'rests upon knowledge that the subject ought not to possess.'" *Parker*, 837 F. Appx. at 346 (quoting *Liteky*, 510 U.S. at 550). Even if the judge does look unfavorably on a litigant, if the opinion is formed on facts introduced during the proceedings it will not be a basis of bias unless the judge "displays a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Essentially, there must be a strong showing of bias that derives from outside or incorrect sources, or the bias is extreme. An example of extreme bias is "disparaging the nationality of the defendant by declaring that all people of that nationality have 'hearts [that] are reeking with disloyalty.'" *Parker*, 837 F. Appx. at 347 (quoting *Liteky*, 510 U.S. at 555).

Judge Charles Walker's statements, on their very face, indicate that he was not prejudging any party or witness, and he certainly demonstrated no objective or subjective

bias toward any party to this matter. His statements were not extreme nor were they derived from any outside sources. As such, there is no basis for recusal and this appeal must be denied.

B.    THERE WERE NO IMPERMISSIBLE EX PARTE COMMUNICATIONS
      WITH THE BANKRUPTCY COURT

In the Recusal Motion, the Appellants accuse Judge Charles Walker of having one or more *ex parte* communications with counsel involved in this matter which, the Appellants claim, biased the Bankruptcy Court. The facts simply do not support these allegations.

First, it is important to note that not all *ex parte* communications are impermissible; indeed, some may be necessary. The occurrence of an *ex parte* communication with the court or its staff does not automatically necessitate recusal. "While *ex parte* communications are discouraged, they aren't always improper and don't necessarily call for recusal." *Blixseth v. Yellowstone Mt. Club, LLC,* 742 F.3d 1215, 1219 (9th Cir. 2013) (citing *Reed v. Rhodes,* 179 F.3d 453, 468-69 (6th Cir. 1999); *United States v. Van Griffin,* 874 F.2d 634, 637 (9th Cir. 1989); *Willenbring v. United States,* 306 F.2d 944, 946 (9th Cir. 1962)). The fact that an *ex parte* communication occurred, on its own, does not require recusal. *In re Allen,* 2009 LEXIS 4431, at *26 (Bankr. Idaho 2009); *see also Willenbring,* 306 F.2d at 946. *Ex parte* communications are only the basis for recusal when the substance of those communications might cause a reasonable person to question the judge's impartiality. *Blixseth,* 742 F.3d at 1219; *United States v. Wecht,* 484 F.3d 194, 214-15 (3d Cir. 2007).

The Appellants base their allegations of bias created by *ex parte* communications on two things: (1) the Bankruptcy Court's disclosure to Brian Manookian's counsel that

"I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear. . .",  Hearing Transcript (Attached as <u>Exhibit 1</u> to the Recusal Motion, Bankr. Doc. 161), p. 85, and (2) testimony of the Appellee's special counsel that he telephoned the courtroom deputy (who is not a member of Judge Walker's chambers[3]) to alert the courtroom deputy to an administrative problem -- that is that the Debtor's principal, Brian Manookian, had an order of protection entered against him by counsel for the bankruptcy estate's largest creditor.[4] These are the only facts upon which the Appellants rely for their accusation that *ex parte* communications have created bias. However, the law seems clear that the conversation detailed above, and about which special counsel testified, would not lead a reasonable person to question the Court's impartiality and did not warrant recusal.

First, special counsel described the purpose of the telephone call to the courtroom deputy as an administrative matter, or "a logistical issue" as he referred to it in his testimony.  *See* Transcript of Deposition of Phillip Young (Attached as <u>Exhibit 1</u> to Bankr. Doc. 174), pp. 43-46.[5]  A number of courts have held that discussions between a party's counsel and a court concerning administrative matters does not constitute an impermissible *ex parte* communication that would warrant recusal.  *See, e.g., Metcalf v. Golden (In re Adbox, Inc.),* 234 Fed. Appx. 420, 420 (9th Cir. 2007) ("Although the Metcalfs have

---

[3] See Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), p. 2, footnote 6.

[4] Note that the Appellants never dispute that Mr. Manookian was, in fact, subject to a protective order obtained by another attorney.

[5] In their Opening Brief, the Appellants state that Appellee's special counsel "denied any specific recollections" of his conversation with the courtroom deputy.  *See* Appellants' Opening Brief, p. 12.  As the transcript of the deposition of Phillip Young proves, that is a demonstrably false statement.

identified several *ex parte* contacts between the bankruptcy judge, his law clerk and counsel for appellees, those communications related to purely procedural matters."); *In re Beard,* 811 F.2d 818, 829-30 (4th Cir. 1987) (meeting between a district court judge and debtor's counsel to discuss "a procedural order to govern the administration of a complex Chapter 11 proceeding" was no basis for recusal); *In re Casco Bay Lines, Inc.,* 17 B.R. 946, 956 (1st Cir. BAP 1982) (communications between bankruptcy judge and Chapter 11 Trustee concerning administrative, rather than substantive, issues did not require disqualification); *Blixseth,* 742 F.3d at 1220 ("*Ex parte* communications with judicial staff concerning routine administrative matters do not raise any inference of bias."); *Allen,* 2009 Bankr. LEXIS at *26-30 (a telephone call between a judge and counsel to discuss scheduling of an emergency hearing did not warrant recusal). This is even more true where the communication was between counsel and the courtroom staff, as opposed to the judge himself. *In re Parson,* 2018 Bankr. LEXIS 830, at *12 (Bankr. N.D. Tex. 2018) ("Importantly, the Court's courtroom deputy and the intake staff at the clerk's office have been the only means of communication between the Court, [counsel], and the Debtor.").

Moreover, even if the purpose of the communication from the Trustee's counsel to the Bankruptcy Court's staff had been to express a security concern about Mr. Manookian, or if the Bankruptcy Court's staff interpreted such conversation as expressing a security concern, that communication would not warrant recusal. The United States Bankruptcy Appellate Panel considered and rejected a nearly identical argument in *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214 (9th Cir. BAP 1996). Among the reasons cited for recusal by the movant in *Seidel* was that "the judge admitted that his secretary had received calls from persons attending the proceedings who expressed concerns about their safety." *Seidel*, 194

B.R. at 224.  However, the appellate court concluded:  "There is no merit to the contention that the judge should be disqualified because of phone calls to his secretary regarding security.  The judge has an obvious administrative responsibility concerning the security of the courtroom.  This includes protecting not only the judge personally, but also the parties, the attorneys, the witnesses, and the spectators."  *Id.*  The 9th Circuit BAP elaborated:  "Here the expressions of concern were made to the judge's secretary, and not to the judge personally.  The security imposed was hardly exceptional.  These facts would not cause a reasonable person to question the judge's impartiality."  *Id.*[6]

Thus, whether the Bankruptcy Court's staff considered the telephone call from the Trustee's special counsel to be merely an administrative function, as counsel believed, or whether they considered it to be a statement of concern for security, as the Appellants allege, it was not an *ex parte* communication that any reasonable person would believe could taint Judge Walker's impartiality.  It involved an administrative matter and its impact upon the Bankruptcy Court, if any, was regarding an administrative matter, *i.e.* the physical location for depositions.  The Bankruptcy Court expressly stated that it has formed no opinion about the veracity of any security concern, much less any substantive matter.

C.      THE BANKRUPTCY COURT CONDUCTED NO EXTRAJUDICIAL
        RESEARCH

In their Recusal Motion the Appellants also (and without any factual basis) accuse Judge Charles Walker of engaging in "extrajudicial research" which biased him against Brian Manookian and/or the parties to the adversary proceeding.  There is no evidence to support the Appellants' allegation in this regard.  Rather, this allegation is based upon an

---

[6] In the *Seidel* case the Court's initial security measure was simply to post a United States Marshal in the courtroom for each hearing.

assumption that the Appellants draw from a statement made by Judge Walker at a hearing on March 17, 2022 regarding Brian Manookian's "past behavior before the tribunals".

In contrast to the presupposition and conjecture that led the Appellants to accuse Judge Walker of extrajudicial research, the Bankruptcy Judge clearly described the sources of information that led him to that statement, all of which was in the record of this bankruptcy case. *See* Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), pp. 13-14. As the Bankruptcy Court summarized, the record *in this bankruptcy case* is replete with references to sanctions issued against Brian Manookian by state and federal courts for:

- Acting in bad faith and disrupting the litigation process
- Engaging in a pattern of obfuscation
- Failure to provide credible explanations
- Engaging in conduct that essentially amounted to a flouting of the Court's Orders
- Repeatedly ignoring the clear directives of the Court
- Conducting himself in a reckless manner
-

Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker (Bankr. Doc. 229), p. 14.[7]

The Bankruptcy Court has denied conducting any extrajudicial research about Brian Manookian or any of the Appellants in this matter. Instead, it has explained the sources for its comments concerning Mr. Manookian's "past behavior before the tribunals"

---

[7] The Appellants contend that Judge Walker should have never considered the contempt pleadings and orders from the state court regarding Mr. Manookian because the contempt order was ultimately reversed and remanded for further hearing. However, the court of appeals opinion that reversed the sanctions order did not find that the judge was actually biased or that his conclusions about Mr. Manookian were unwarranted. In fact, it praised the lower court's "extraordinary patience" and its "thorough…review of serious allegations". The court of appeals only reversed because it found that there existed a "reasonable basis for questioning his impartiality". Therefore, the Bankruptcy Court was warranted in drawing certain conclusions based upon the state court proceedings.

and has identified those sources from within the record of this bankruptcy case. There is no evidence to dispute the Bankruptcy Court's explanation; therefore, the Bankruptcy Court properly denied the Recusal Motion on the grounds that it had not conducted extrajudicial research.

>    D.    ONE OF THE APPELLANTS, BRIAN MANOOKIAN, LACKS
>            STANDING

Finally, the Appellee must again point out that this appeal is being advanced in part by Brian Manookian, who is not a party to the underlying adversary proceeding and has no standing in this matter. "In order to have standing to appeal a bankruptcy court order, an appellant must be a 'person aggrieved' by the bankruptcy court's order." *Simon v. Amir (In re Amir)*, 436 B.R. 1, 9-10 (6th Cir. B.A.P. 2010) (citing *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.,* 77 F.3d 880, 882 (6th Cir. 1996)). "This doctrine limits standing to those persons who 'have been directly and adversely affected pecuniarily by the order. . . . Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will [an appellant] have standing to appeal.'" *Id.* at 10 (quoting *Fidelity Bank*, 77 F.3d at 882; citing *Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.),* 286 B.R. 49, 51 (6th Cir B.A.P. 2002)). "The burden of proving that a party is a 'person aggrieved' is on the appellant asserting standing to pursue an appeal." *Id.* (citing *Fidelity Bank*, 77 F.3d at 882).

In this case, Brian Manookian is not a defendant in the adversary proceeding; therefore, he has not been "directly and adversely affected pecuniarily by the order" and has no standing to pursue this appeal. Since the other Appellants have standing to pursue the appeal, this issue is not determinative to the outcome of this appeal. However, this Court

should find that Mr. Manookian lacks standing to pursue this appeal so as to clarify this procedural matter for the seemingly inevitable future appeal of this matter.

## VII.    CONCLUSION

The Appellants have failed to support their allegations in the Recusal Motion with any admissible evidence.  Judge Charles Walker has demonstrated no bias against any of the Appellants.  Judge Charles Walker had no communications concerning this case or any of the Appellants with any party, and the courtroom staff had no impermissible *ex parte* communications concerning this case.  Judge Charles Walker did not conduct any extrajudicial research regarding this matter.  Nevertheless, Brian Manookian (who is not even a party to this adversary proceeding) and the other Appellants continue to press their unfounded allegations against a sitting bankruptcy judge in order to delay the administration of justice in this case.  For all of the foregoing reasons, the Bankruptcy Court's Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker should be affirmed and this appeal should be denied.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr. (21087)
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel:    615.465.6000
phillip@thompsonburton.com

Special Counsel for Appellee,
Jeanne Ann Burton, Trustee

## VIII.   CERTIFICATE OF COMPLAINCE WITH FED. R. APP. P. 32(a)(7)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5963 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 12-point Times New Roman Font.

## IX.     CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on this 23rd day of June, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system and by U.S. Mail, first-class, postage prepaid, to all parties listed below. Parties may access this filing through the Court's electronic filing systems.

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.