# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**Appeal from**
**Burton v. Hagh Law PLLC, et al.**
**Case No. 3:20-ap-90002**


**Brian Manookian, Manookian PLLC,**
**Afsoon Hagh, and Hagh Law PLLC, Appellants**

v.

**Trustee Jeanne Ann Burton, Appellee**


**Case No. 3:23-cv-00392**

**Judge Aleta A. Trauger**


**ORAL ARGUMENT REQUESTED**

---

**APPELLANTS' REPLY BRIEF**

---

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................3

II. THE COURT'S REFUSAL TO DISCLOSE EX PARTE COMMUNICATIONS DE FACTO CREATES THE APPEARANCE OF IMPROPRIETY AND PARTIALITY .........4

   A. The Court has conceded having multiple ex parte communications, but Appellants have only been able to compel disclosure of information about one. .......................6

   B. The Court had, and continues to have, the burden of disclosing the details of its ex parte communications, which it refuses to do.................................................................7

   C. The Court's refusal to make the required disclosures de facto creates the appearance of impropriety and raises a reasonable question about its impartiality. .......................10

   D. Appellee's contention that the undisclosed ex parte communications were procedural in nature is speculative, unfounded, and unavailable where the Court itself refuses to disclose the details of those conversations. ...................14

III. APPELLEE DOES NOT ADDRESS THE COURT'S SELF-DETERMINATION THAT THE PROCEEDINGS ARE NOW "TAINTED" ........................................................................ 15

IV. CONCLUSION ............................................................. 17

## I. INTRODUCTION

The central issue in this recusal appeal is that Bankruptcy Judge Charles Walker has admitted to having had "at least two" *ex parte* conversations, while this case has been pending, with "lawyers [who] call[ed] the Court" to discuss "serious concerns" about Brian Manookian, the sole member of the Debtor in the underlying bankruptcy case, and the sole member of Defendant Manookian PLLC in this adversary case.[1]

Despite casually referencing those *ex parte* communications in open court over a year after their occurrence as the basis of a ruling he was in the process of making, Judge Walker, then and now, refuses to disclose the details of the conversations—including basic information such as their date, content, or the parties thereto. This refusal is a bright-line violation of the rules governing Judge Walker's conduct as a federal bankruptcy judge, and it requires his removal from this case.

In her response, rather than address the Court's refusal to make mandatory disclosures regarding each of its *ex parte* communications, the Appellee spends the entirety of her brief arguing that one of the *ex parte* communications (a conversation to which her lawyer was a party) was

---

[1] Transcript of Pretrial Conference, Page 84:11-23 (App'x at 094). (Emphasis Added).

permissible because its content was allegedly procedural and non-substantive in nature.

Appellants vigorously dispute that characterization. But even if Appellee's characterization is accurate, the Court still must be disqualified: the Judge himself identified <u>at least two</u> *ex parte* conversations with at least one additional, still unidentified, lawyer. The year-long delay in disclosure of the *ex parte* conversation with Appellee is sufficient grounds for recusal. But, more importantly, the ongoing refusal to disclose the other *ex parte* conversations not only requires recusal but is unprecedented in Appellants' review of applicable federal caselaw.

## II. THE COURT'S REFUSAL TO DISCLOSE *EX PARTE* COMMUNICATIONS *DE FACTO* CREATES THE APPEARANCE OF IMPROPRIETY AND PARTIALITY

With certain narrow exceptions, the Code of Judicial Conduct prohibits judges from engaging in *ex parte* communications about cases pending before their court. Where such conversations occur, the Court is required to provide notice and full disclosure of the communications to the affected parties.

But that did not remotely occur here. Not only did Judge Walker (1) engage in multiple *ex parte* communications (2) about this case (3) while the case was pending (4) with multiple lawyers (5) while failing to make a full

disclosure of them; he continues to refuse to comply with the canons of the Code of Judicial Conduct requiring that he give notice and provide the content of and details about the conversations.

As a result, Appellants – who were not privy to these "multiple" conversations – have only been able to learn some information about, <u>at most</u>, one of those *ex parte* conversations with one lawyer – and only according to that lawyer's own self-serving account. That specific conversation occurred when Appellee's Counsel called the Court to express "serious" concerns about Brian Manookian.

That leaves at least one more *ex parte* conversation undisclosed by the Court's own admission, possibly more. But over a year later, and despite vigorous attempts by Appellants to seek and compel disclosure of the parties, dates, and content of those communications, Judge Walker refuses to disclose any details whatsoever.

That refusal is not only entirely violative of Code of Conduct for United States Judges; it is mandatory grounds for recusal because it de facto creates the appearance of impropriety and a reasonable basis to question the Court's impartiality.

A.  **The Court has conceded having multiple *ex parte* communications, but Appellants have only been able to compel disclosure of information about one.**

This is an important, if obvious point. The Court stated that it has engaged in multiple *ex parte* communications with multiple lawyers about this case, while the case has been pending, on the topic of their "serious" concerns about Brian Manookian; the sole member of the Debtor, Cummings Manookian, and sole member of the Defendant, Manookian PLLC.

But the Appellants have only ever been able to discover information regarding one of those communications. And the source was not the Court, as the Code of Judicial Conduct requires. Rather, Appellants were forced to depose Counsel for Appellee, Phillip Young, who admitted to initiating contact with the Court by calling chambers to discuss his "serious concerns" about Brian Manookian, the sole member of the party Mr. Young was suing.

And that is the glaring deficiency with Appellee's response. Because the Court itself refuses to provide any information about the other *ex parte* communications with "multiple lawyers" regarding "serious concerns" about Brian Manookian that it admits having engaged in, Appellee necessarily only addresses the conversation her own lawyer had with the Court in her Response Brief. That leaves at least one, possibly more, *ex parte*

6

communications undisclosed by the Court's own admission. And that ongoing refusal to disclose requires the Court's recusal.

**B.     The Court had, and continues to have, the burden of disclosing the details of its *ex parte* communications, which it refuses to do.**

Following Judge Walker's casual aside that he had repeatedly engaged in *ex parte* communications regarding the sole member of the Debtor and Defendant in this matter, with "multiple lawyers," during the pendency of the case, Appellants promptly requested in writing that he disclose the contents of those communications and recuse himself from the matter.

Rather than make the mandatory disclosures, Judge Walker instead set the recusal motion for an evidentiary hearing; an evidentiary hearing at which he would be the only person known to Appellants in possession of the evidence of Judge Walker's own *ex parte* communications.

Given that reality, and given Judge Walker's refusal to voluntarily disclose the contents of the conversations he gratuitously commented upon having, Appellants issued a subpoena for Judge Walker's testimony on the narrow topic of his *ex parte* communications. Judge Walker quashed that subpoena within twenty-four hours – taking the time to author a scathing order excoriating the Appellants for "tainting" the proceedings – but again declining to disclose the contents of his communications at issue.

Federal courts have repeatedly recognized that Judge Walker's actions in this regard put the Appellants – who were not privy to the *ex parte* communications – in an impossible situation:

> "We have previously described *ex parte* communications as 'anathema in our system of justice.' One leading reason is that *ex parte* meetings are often, as they were here, unrecorded. Consequently, there is no official record of what was said during those meetings. <u>Of even greater concern is the argument urged upon us by the Petitioners who, without knowledge of what was discussed at these meetings, contended that they could not respond to these 'silent' facts.</u>"

*In re Kensington International Ltd.*, 368 F.3d 289, 309 (3d Cir. 2004) (emphasis added).

At least one circuit has held that, where a judge engages in *ex parte* communications, the burden is on the judge to disclose the contents and circumstances of the communications—not the party who was excluded:

> "Sound public policy considerations . . . militate for the adoption of… a rule that the parties should be apprised of any possible ground for disqualification known privately to the judge. <u>The most compelling of these public policy considerations is that the judge is in the best position to know of the circumstances supporting a recusal motion.</u>"

*Kensington International*, 368 F.3d at 314 (emphasis added).

But rather than voluntarily making the necessary disclosures, Judge Walker prevented Appellants from discovering the very evidence he required them to marshal by unilaterally setting Appellants' Recusal Motion for an evidentiary hearing while simultaneously refusing to either make an unsworn disclosure or submit to a limited deposition. This burden-shifting, onto the party that did not engage in the *ex parte* communications, and who necessarily cannot respond to "silent facts" was incorrect, as explained by the Third Circuit in analogous circumstances:

> We believe Judge Wolin improperly placed the burden on the Petitioners to uncover [the *ex parte* content]. Such a requirement does not further the purpose of § 455(a), which "mandates, at a minimum, the appearance of neutrality and impartiality in the administration of justice."
>
> ...
>
> In the recusal context, we are satisfied that if there is to be a burden of disclosure, that burden is to be placed on the judge to disclose possible grounds for disqualification. *See United States v. Bosch*, 951 F.2d 1546, 1555 n. 6 (9th Cir. 1991) (noting that § 455(a) "has a de facto disclosure requirement.*"); see also Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525 (11th Cir. 1988) (recognizing that recusal motion could have been avoided if judge had disclosed grounds for recusal to parties).

*Kensington International*, 368 F.3d at 313-14.

The Code of Conduct and federal caselaw are clear: Judge Walker has the burden of apprising the parties "of any possible ground for disqualification known privately to the judge." His refusal to do so, despite openly acknowledging engaging in multiple instances of *ex parte* communications about this case, while this case is pending, de facto requires recusal.

Stated alternatively, the Court's stated intent and active measures to defy Canons of Conduct promulgated to promote integrity and fairness by definition give rise to reasonable questions regarding its impartiality. And that mandates recusal.

**C.     The Court's refusal to make the required disclosures de facto creates the appearance of impropriety and raises a reasonable question about its impartiality.**

The federal statute on recusal is found at 28 U.S.C. § 455. Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.

A reasonable person would conclude that Judge Walker's impartiality might reasonably be questioned given the following chain of events:

10

1. Judge Walker receives and engages in multiple *ex parte* communications "with at least two lawyers" who "call[ed] the Court" to raise "serious concerns" about "your client [Brian Manookian]."[2] Judge Walker does not disclose those conversations promptly on the record.

2. Over a year later, Judge Walker first mentions his *ex parte* communications in open court as justification for a contested ruling. Judge Walker again does not take the opportunity to disclose the details of the *ex parte* communications on the record.

3. When Appellants promptly seek Judge Walker's belated disclosures and recusal via written motion, Judge Walker sets the request for evidentiary hearing (despite the fact that he is the sole holder of such evidence known to Appellants). In setting the hearing, Judge Walker again declines the opportunity to disclose the details of the communications at issue on the record.

4. After Appellants issue a subpoena to Judge Walker on the limited topic of his *ex parte* communications, Judge Walker quashes the subpoena in written order taking the time to excoriate Appellants and their motives; but again, refusing to simply detail the *ex parte* communications on the record.

---

[2] Transcript of Pretrial Conference, Page 84:11-23 (App'x at 094).

11

5. When Appellants appeal the quashing of their subpoena, Judge Walker requires the parties to appear for an in-person hearing where, after assembling the parties, he simply reads a statement into the record that he will not act on the matter while subpoena is on appeal. Having summoned all to the Courthouse to read a statement into the record, Judge Walker again refuses include within that record any details of his *ex parte* communications.

6. Judge Walker holds the lengthy, in-person recusal hearing, during which he refuses to testify or otherwise disclose any details of the very communications at issue – known to him and required to be disclosed by the U.S. Code of Conduct.

7. Judge Walker denies his recusal in a lengthy written order, largely relying on a long-vacated state court order regarding Brian Manookian. In authoring that order, Judge Walker again refuses to simply disclose, or otherwise explain, the details of the very *ex parte* communications upon which the controversy hinges.

These facts would lead any objective observer to question Judge Walker's impartiality. Indeed, no objective observer would fail to question Judge Walker's impartiality given these facts and the seven (7) discrete occasions upon which Judge Walker either in person, or in writing, failed to comply with a Canon of Conduct whose fundamental purpose is to ensure impartiality.

This is not a normal situation.  It is exceptional that a sitting federal bankruptcy judge would reveal having participated in multiple *ex parte* communications and not only refuse to voluntarily disclose their details, but actively block measures to discover their contents and the identities of the parties thereto.  Indeed, Appellants are unable to find an analog in federal case law because this simply does not appear to happen.  But commenters have cataloged the effect of such behavior in state courts.

"Failure to disclose a conversation and its contents creates the appearance of impropriety."  Leslie W. Abramson, The Judicial Ethics of *Ex parte* and Other Communications, 37 Houston Law Review 1343, at 1375 (2000) (citing *Bell v. State*, 655 N.E.2d 129, 132 (Ind. Ct. App. 1995) (holding that "the trial judge created an appearance of impropriety" by "failing to fully disclose the extent of his [*ex parte*] conversation"); *Niblock v. State*, 711 P.2d 771, 772-73 (Kan. Ct. App. 1985) (deferring to the state's supreme court to determine an ethical violation where the trial judge responded to a letter from state corrections officials and then presided over a hearing presenting the same issue without revealing the letter to the parties or counsel).

"A trial judge's failure to disclose participation in a banned communication or it reveal its contents will likely result in the conclusion that the judge engaged in an ethical violation." *Abramson*, 37 Houston Law

Review at 1376 (citing *State v. Rich*, 907 P.2d 1382, 1383-84 (Ariz. 1995) (en banc) (placing the burden on the appellee to prove that there was no reversible error where the judge failed to disclose an improper *ex parte* communication with the jury)); *In re Wheatley*, 697 N.E.2d 938, 941 (Ml. App. Ct. 1998) (vacating and remanding where the trial judge created the appearance of impropriety by failing to disclose the receipt of an improper *ex parte* communication).

The reasoning underpinning these decisions is sound and in accord with the federal rules governing disclosure of *ex parte* communications. The very act of refusing to do so shakes the confidence of parties to the proceedings.

A judge's baffling but steadfast refusal to simply follow the rules put in place to protect the integrity of the proceedings is itself grounds for a reasonable observer to question the judge's impartiality. Judge Walker has, for reasons known to him, decided that he will not disclose or otherwise detail the multiple conversations he acknowledged having with at least two lawyers about this case. His decision requires disqualification.

**D. Appellee's contention that the undisclosed *ex parte* communications were procedural in nature is speculative, unfounded, and unavailable where the Court itself refuses to disclose the details of those conversations.**

It is not clear if Appellee is arguing that the conversations to which she was not a party should also be treated as procedural or non-substantive in nature. She appears to suggest that could be the case. Appellee's suggestion is unavailing. The Court has chosen not to detail the conversations to the parties. Appellee's speculation that *ex parte* conversations of which she has no knowledge were entirely appropriate or somehow procedural in nature should be rejected.

### III. APPELLEE DOES NOT ADDRESS THE COURT'S SELF-DETERMINATION THAT THE PROCEEDINGS ARE NOW "TAINTED"

The federal statute governing recusal contains a separate provision requiring recusal where the "the judge has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). This is a more stringent standard than 28 U.S.C. § 455(a); but it is fulfilled here, and Appellee has declined to rebut Appellants' argument regarding the same.

In quashing Appellants' subpoena to the Court, Judge Walker authored a vitriolic order, detailed in Appellants' Initial Brief, announcing that by seeking disclosures required by the U.S. Code of Conduct, Appellants had "tainted" and "contaminated" the proceedings based on malicious motives:

- "As to the first consideration, the Court finds that the Notice serves no purpose other than to waste the resources of the United States for private purposes... and is a misuse of the resources available in order

to avail oneself of the justice provided by the bankruptcy system." Dkt. No. 178 (App'x at 007).

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court." Dkt. No. 178 (App'x at 007).

- The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." Dkt. No. 178 (App'x at 008).

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings." Dkt. No. 178 (App'x at 008).

This is the Court's own language, and it is a candid acknowledgement of bias. Indeed, it would be hard to imagine a clearer articulation of bias than a Court's own announcement that a proceeding is now "tainted" or "contaminated" because a litigant was deliberately trying to taint the proceedings, not making a good-faith argument under federal law, the Code of Judicial Conduct, and relevant authority. That view, assigning nefarious motives to certain parties based not on evidence but on the Court's personal reaction to the parties' efforts to protect their rights, is an independent and sufficient grounds for its disqualification.

## IV. CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court reverse the Order Denying the Motion to Recuse (Docket No. 229) and enter an Order disqualifying the Bankruptcy Court and further requiring it to disclose all *ex parte* communications about the case such that Appellants can evaluate prior orders of the Court in light of those conversations.

Date: July 7, 2023

Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Appellants' Reply Brief was filed July 7, 2023 and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Jay R. Lefkovitz
Lefkovitz & Lefkovitz, PLLC
312 East Broad Street, Suite A
Cookeville, TN 38501
(931) 528-5297 (T)
931-526-6244 (F)
JLefkovitz@lefkovitz.com

Counsel for Debtor Cummings Manookian

Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

Counsel for Trustee Jeanne Anne Burton

John P. Konvalinka
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street Suite 900
Republic Centre
Chattanooga, TN 37450-0900
(423) 756-8400 (T)
(423) 756-6518 (F)
jkonvalinka@gkhpc.com

Counsel for Creditor Grant, Konvalinka & Harrison, P.C.

Daniel Puryear
Puryear Law Group
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
(615) 255-4859 (T)
(615) 630-6602 (F)
dpuryear@puryearlawgroup.com

Counsel for Creditor D.F. Chase, Inc.

/s/ John Spragens